# Exhibit A

DATE OF FILING
INDEX #:

Plaintiff designates
Erie County
as the place of trial.

The basis of venue is:
Situs of Incident.

Plaintiff resides at:
Texas

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ERIE**
-----------------------------------------------------------------------X     **Index No.:**
**ANONYMOUS KB,**

                                  **Plaintiff,**                    **SUMMONS**
              **-against-**

**BOYS & GIRLS CLUBS OF AMERICA, BOYS &**
**GIRLS CLUB OF BUFFALO, INC., AND BOYS &**
**GIRLS CLUBS OF ERIE COUNTY, INC.,**

                                  **Defendants.**
-----------------------------------------------------------------------X

**To the above named Defendants:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

                              THE MULLEN LAW FIRM
                              Attorneys for Plaintiff
                              110a Meadowlands Parkway, Suite 103
                              Secaucus, NJ 07094
                              201-420-1911

                               /s/Corinne M. Mullen_____
                              Corinne M. Mullen, Esq.

Dated: May 4,  2021
DEFENDANTS' ADDRESSES:
SEE VERIFIED COMPLAINT

1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ERIE**
-----------------------------------------------------------------------X    **Index No.:**
**ANONYMOUS KB,**

**Plaintiff,**          **VERIFIED COMPLAINT**

     **-against-**

**BOYS & GIRLS CLUBS OF AMERICA, BOYS &**
**GIRLS CLUB OF BUFFALO, INC., AND BOYS &**
**GIRLS CLUBS OF ERIE COUNTY, INC.,**

**Defendants.**

-----------------------------------------------------------------------X

Plaintiff, Anonymous KB, by and through undersigned counsel, complaining of the

Defendants, upon information and belief, alleges as follows:

**THE PARTIES**

1.     This Complaint arises from the sexual battery of Plaintiff by DAVID DARLAK

between 1992 and 1996, and on other occasions in the early to mid-1990s. These incidents occurred

while Plaintiff was a "Little Brother" at Boys and Girls Club of Buffalo, Inc.

2.     Plaintiff is an adult resident of the State of Texas and is otherwise *sui juris*. Given

the nature of the allegations, Plaintiff has elected to proceed using the pseudonym Anonymous KB

in this matter. Plaintiff's identity has been or soon will be made known to Defendants under

separate cover.

3.     Defendant Boys & Girls Clubs of America (hereinafter "BGC America") is a non-

profit District of Columbia organization headquartered in Atlanta, Georgia and registered to

conduct business in The State of New York with New York DOS process designated as Boys and

Girls Clubs of Erie County, Inc., 742 Delaware Ave., Buffalo, NY 14209, ID # 802400.

4.     Defendant Boys & Girls Clubs of America (hereinafter "BGC America") is a non-

2

profit District of Columbia organization headquartered in Atlanta, Georgia and registered to conduct business in The State of New York with New York DOS process designated as Boys and Girls Clubs of Buffalo, Inc., Attn: Chief, Professional Officer, 282 Babcock St., Buffalo, NY 14210, ID # 142179.

 5. BGC America operates through a national system of local affiliates, including, but not limited to: Boys & Girls Clubs of Buffalo, Inc. and Boys & Girls Club of Erie County, Inc.

 6. "The Boys & Girls Club Movement is a federated model. 1,049 independently and locally governed organizations serve youth in 4,7238 Club locations.   BGCA's national headquarters, located in Atlanta, provides support for Clubs in youth program development, marketing and communications, resource development, and administration. Clubs also receive assistance from regional service centers and Government Relations offices in Washington, D.C." *See, https://www.bgca.org/about-us/annual-report*

 7. "Child Safety is Our 1 Priority. Layers of safety policies and guidelines create a safe, fun environment so kids can achieve." *See, https://www.bgca.org/about-us*

 8. "Our Commitment to Inclusion. We believe every kid has what it takes. The mission and core beliefs of Boys & Girls Clubs fuel our commitment to promoting safe, positive and inclusive environments for all. Boys & Girls Clubs of America supports all youth and teens – of every race, ethnicity, gender, gender expression, sexual orientation, ability, socio-economic status, and religion – in reaching their full potential." *See, https://www.bgca.org/about-us/our-mission-story*

 9. At all times relevant, Defendant BGC America retained and/or employed individuals within its programs who provided supervision, counseling, and mentoring services to minors.

3

10.     At all times relevant, Defendant BGC America had the power to employ, retain, train, supervise, and terminate these individuals working with minors within its programs.

11.     At all times relevant, Defendant BGC America sought out the participation of minors in its programs.

12.     At all times relevant, Defendant BGC America had control, custody, and supervision over the minors placed in any one of its programs.

13.     At all times relevant, Defendant BGC America, its agents, servants, and/or employees operated, managed, controlled, supervised, and/or directed the BGC Buffalo and/or BGC Erie mentorship program in which Plaintiff participated.

14.     Defendant Boys & Girls Club of Buffalo, Inc. (hereinafter "BGC Buffalo") is a not-for-profit corporation doing business in The State of New York with a principal place of business at 282 Babcock Street, Buffalo, NY 14210.

15.     "Since 1926 Boys & Girls Clubs of Buffalo has been at the forefront of youth development, working with young people from disadvantaged economic, social and family circumstances.  We have actively sought to enrich the lives of girls and boys whom other youth agencies failed to reach and we are dedicated to ensuring that our community's disadvantaged youngsters have greater access to quality programs and services that will enhance their lives and shape their futures.… Today, Boys & Girls Clubs of Buffalo serves nearly 2,600 youth between the ages of 5-18. We are not only a place where youth can come and hang out after school, but a safe haven that allows them to develop into young adults with the necessary skills and sense of self to succeed outside of our buildings." *See, bgcbuffalo.org/about-us*

16.     "At Boys & Girls Clubs of Buffalo…Member Safety is our #1 Priority. All Club professionals and part-time staff undergo background checks and are fingerprinted. Staff are

trained utilizing Boys & Girls Clubs of America safety and programming standards and are given tools and resources to maintain safety strategy and protocols. With a Board-Lead Safety Committee, Boys & Girls Clubs of Buffalo is dedicated at all times to the safety and well-being of both our members and our staff." *See, https://www.bgcbuffalo.org/*

17.     At all times relevant, Defendant BGC Buffalo retained and/or employed individuals within its programs who provided supervision, counseling, and mentoring services to minors.

18.     At all times relevant, Defendant BGC Buffalo had the power to employ, retain, train, supervise, and terminate these individuals working with minors within its programs.

19.     At all times relevant, Defendant BGC Buffalo sought out the participation of minors in its programs.

20.     At all times relevant, Defendant BGC Buffalo had control, custody, and supervision over the minors placed in any one of its programs.

21.     At all times relevant, Defendant BGC Buffalo, its agents, servants, and/or employees operated, managed, controlled, supervised, and/or directed the BGC America and/or BGC Erie mentorship program in which Plaintiff participated.

22.      Defendant Boys & Girls Club of Erie County, Inc. (hereinafter "BGC Erie") is a not-for-profit corporation doing business in The State of New York with a principal place of business at 2061 Bailey Ave, Buffalo, NY 14211

23.     At all times relevant, BGC Erie was and continues to be a local agency or affiliated agency operation under the control, direction, and/or supervision of Defendants BGC America and/or BGC Buffalo.

24.     At all times relevant, Defendant BGC Erie retained and/or employed individuals within its programs who provided supervision, counseling, and mentoring services to minors.

5

25.     At all times relevant, Defendant BGC Erie sought out the participation of minors in its programs.

26.     At all times relevant, Defendant BGC Erie had control, custody, and supervision over the minors placed in any one of its programs.

27.     At all times relevant, Defendant BGC Erie was and continues to be a local agency or affiliated agency operating under the control, direction, and/or supervision of Defendants BGC America and/or BGC Buffalo.

28.     At all times relevant, Defendant BGC Erie, its agents, servants, and/or employees operated, managed, controlled, supervised, and/or directed the BGC America and/or BGC Buffalo mentorship program in which Plaintiff participated.

## JURISDICTION AND VENUE

29.     Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

30.     Plaintiff brings this suit within the extended time period as provided for in Sections 208 and 214-G of the Civil Practice Law and Rules.

31.     Jurisdiction is proper because this Complaint seeks monetary damages in excess of $25,000.00, exclusive of interest, costs, and attorney's fees, exceeding the jurisdictional limits of all other lower courts.

32.     This Court has personal jurisdiction over Defendant BGC America pursuant to CPLR §§ 301 and 302 in that Defendant BGC transacts business within the State of New York and/or contracts to supply goods or services in New York, and because the acts and omissions occurred in Erie County, and Plaintiff's claims arise out of and relate to Defendant BGC' contacts in New York.

6

33.     This Court has personal jurisdiction over Defendant BGC Erie pursuant to CPLR §§ 301 and 302 as Defendant BGC Erie has principal executive offices in New York, and because the acts and omissions complained of herein occurred in Erie County, and Plaintiff's claims arise out of and relate to Defendant BGC Erie's contacts in New York.

34.     This Court has personal jurisdiction over Defendant BGC Buffalo pursuant to CPLR §§ 301 and 302 as Defendant BGC Buffalo has principal executive offices in New York, and because the acts and omissions complained of herein occurred in Erie County, and Plaintiff's claims arise out of and relate to Defendant BGC Buffalo's contacts in New York.

35.     Venue is proper in this Court pursuant to CPLR§ 503 because one or more Defendants have their principal offices in Erie County and the acts and omissions giving rise to this Complaint occurred in Erie County.

36.     The provisions of CPLR § 1602 of the CPLR do not apply to the within action, including nondelegable duty and/or the doctrine of *respondeat superior*.

## FACTS

37.     Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

38.     Based on advertisements, promotions, and other community outreach efforts, Plaintiff's mother had heard of BGC America, BGC Buffalo, and/or BGC Erie and decided to contact its local affiliate to learn more about their program for her son.

39.     In approximately 1996, when Plaintiff was about 10 years old, Plaintiff was removed from the custody of his mother and placed in foster care.  In addition, Plaintiff was required to enroll Plaintiff in the Boys & Girls Club program.

40.     Thereafter, Plaintiff was enrolled in one of Defendants BGC America, BGC

7

Buffalo and/or BGC Erie's programs, where Plaintiff met Club Director DAVID DARLAK.

41.     At all times relevant, DARLAK  was an adult resident of New York City, who lived near Plaintiff, and was in his 30s or 40s.

42.     At all times material, DARLAK was an employee and/or volunteer agent of Defendants BGC America, BGC Buffalo, and/or BGC Eric, assigned to the position of "executive director".

43.     At all times material, DARLAK was under the direct supervision, employ, and/or control of Defendants BGC America, BGC Buffalo, and/or BGC Erie.

44.     At all times material, Defendants BGC America, BGC Buffalo, and/or BGC Erie placed DARLAK into a position where he was responsible for the supervision, protection, guidance, and growth of Defendants BGC America, BGC Buffalo, and/or BGC Erie's minor program participants, including Plaintiff.

45.     In his role as a "Executive Director", Defendants authorized and allowed their "executive director" mentors, including DARLAK, to provide guidance to minor program participants alone, with unfettered and unsupervised access to them.

46.     By retaining DARLAK, Defendants implicitly or explicitly represented to minors and their families, including Plaintiff, that DARLAK did not pose a threat to children - a representation that Plaintiff was required to rely on as a child.

47.     DARLAK abused his position of trust and power as an employee and/or volunteer agent entrusted with the well-being of Defendants' minor program participants, including Plaintiff.

48.     In about 1996, DARLAK asked Plaintiff to come to his house and work for him. DARLAK enticed Plaintiff to come to his house by offering to pay him for working in DARLAK's house.

8

49.     Plaintiff was forced to spend nights at DARLAK's home, where he would be forced to drink and go in the hot tub including dressing and undressing in front of DARLAK.  Plaintiff would also wake up with no clothes on DARKLAK would be touching Plaintiff.

50.     Plaintiff was also subjected to abuse by DARKLAK in the basement of the BGC Buffalo.

## AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST THE DEFENDANTS BGC AMERICA, BGC BUFFALO, AND BGC ERIE

51.     Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

52.     Defendants BGC America, BGC Buffalo, and/or BGC Erie had a special relationship with Plaintiff.

53.     By holding DARLAK out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the then minor Plaintiff, Defendants entered into a special relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendants' undertaking the care and guidance of the then vulnerable Plaintiff, Plaintiff was uniquely vulnerable, without any parents and was incapable of self-protection.

54.     Furthermore, Defendants, by holding themselves out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. This empowerment prevented the Plaintiff from effectively protecting himself, and Defendants thus entered into a special relationship with Plaintiff. By holding themselves out as a safe, moral, and trusted institution to Plaintiff's parents, Defendants induced Plaintiff's parents to entrust their child to Defendants and thereby deprived Plaintiff of the protection of his family.

55.     Upon information and belief, before Plaintiff was sexually abused by DARLAK, Defendants had actual or constructive knowledge of material facts regarding DARLAK's sexual

9

misconduct, impulses, and behavior.

56.    Despite clear indications of danger, Defendants took no steps to discover the specific nature of DARLAK's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

57.    Defendants held out DARLAK as a qualified Executive Director, mentor, and undertook the supervision, protection, guidance, and growth of Plaintiff. Defendants exercised a direct role over Plaintiff. Accordingly, Plaintiff placed trust in Defendants so that Defendants and their agents, including DARLAK gained superiority and influence over Plaintiff. Defendants entered into a special relationship with the Plaintiff.  It was not until Children Protective Services were made aware of the abuse by Defendants, that Plaintiff was removed from the care of the Defendants.

58.    Defendants owed Plaintiff a duty of reasonable care because it assumed duties owed to Plaintiff and had superior knowledge about the risk that DARLAK posed to Plaintiff, the risk of abuse in general in its programs, and/or the risks that their programs posed to minor children. Defendants had the duty to protect the moral purity of Plaintiff and other children in their mentorship programs.

59.    Defendants owed Plaintiff a duty of reasonable care because they assumed that duty and because they solicited youth for participation in their youth programs.

60.    Defendants owed Plaintiff a duty of reasonable care because they undertook custody of minor children, including Plaintiff.

61.    Defendants owed Plaintiff a duty of reasonable care because they promoted their programs as being safe for children.

62.    Defendants owed Plaintiff a duty to protect Plaintiff from DARLAK's sexual

deviancy, prior to and/or subsequent to DARLAK's misconduct.

63.     Defendants owed Plaintiff a duty of reasonable care because they held out their agents, including DARLAK, as safe to work with children.

64.     Defendants owed Plaintiff a duty of reasonable care because they encouraged parents and children to spend time with their agents; and/or encouraged their agents, including DARLAK, to spend time with, interact with, and/or recruit children.

65.     Defendants had a duty to Plaintiff to protect him from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff.

66.     Defendants breached their duties by exposing Plaintiff to a pedophile.

67.     Defendants breached their duties by subjecting Plaintiff to an employee of Boys and Girls Club that Defendants knew, or should have known, was a pedophile.

68.     Defendants breached their duties by recruiting, hiring, and maintaining DARLAK in a position of authority over children.

69.     Defendants breached their duties by exposing DARLAK to children.

70.     Defendants breached their duties by giving unsupervised access to DARLAK alone with children unsupervised.

71.     Defendants breached their duties by placing DARLAK in a position of authority over and trust with Plaintiff.

72.     Defendants breached their duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

73.     Defendants breached their duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

74.     Defendants breached their duties by failing to adequately inform families and children of the known risks of child sex abuse within the Boys and Girls Club organizations and programs.

75.     Defendants breached their duties by holding out their employees and agents, including DARLAK, as safe and wholesome for children to be with.

76.     Defendants breached their duties by failing to investigate DARLAY for risks of child molestation.

77.     Defendants breached their duties by failing to properly train the workers (such as DARLAK) at institutions and programs within Defendants' geographical confines.

78.     Defendants breached their duties by failing to have any outside agency test their safety procedures.

79.     Defendants breached their duties by failing to protect the children in their programs from child sex abuse; failing to adhere to the applicable standard of care for child safety.

80.     Defendants breached their duties by failing to investigate the amount and type of information necessary to represent the institutions, programs, and leaders and people as safe.

81.     Defendants breached their duties by failing to respond to and/or investigate information of improper conduct of employee or agent volunteers with children, including DARLAK.

82.     Defendants breached their duties by failing to properly train their employees, including DARLAK, and/or agent volunteers to identify signs of child molestation by fellow employees and/or agent volunteers.

83.     Defendants breached their duty to use ordinary care in determining whether their programs were safe and/or to determine whether they had sufficient information to represent their

programs as safe.

84.     Defendants breached their duty of care by recruiting, hiring, and maintaining DARLAK as an employee of the Boys & Girls Club in their programs.

85.     Defendants breached their duty of care by holding out their programs as a safe and moral place for children, which they were not.

86.     Defendants breached their duty of care by failing to have sufficient policies and procedures in effect to prevent abuse in their programs.

87.     Defendants breached their duty of care by failing to investigate risks in their programs.

88.     Defendants breached their duty of care by failing to properly train the workers, employees, and/or volunteer agents, including DARLAK, at their facilities and/or in their programs.

89.     Defendants breached their duty of care by failing to investigate the amount and type of information necessary to represent their facilities as safe.

90.     Defendants breached their duty of care by and failing to train their employees and/or volunteer agents properly to identify signs of child molestation by fellow employees and/or volunteer agents.

91.     Defendants breached their duty to Plaintiff by holding out employees and/or volunteer agents including DARLAK, as safe, moral, and trustworthy people and by failing to warn Plaintiff and his guardians of the risk that DARLAK posed and the known risks of child sexual abuse by employees and/or volunteer agents in the Boys & Girls Club programs in general.

92.     Defendants also failed to warn Plaintiff and his guardians about any of the knowledge that the Defendants had about child sex abuse perpetrated by Boys & Girls Club

13

employees and/or volunteer agents.

93. Defendants further breached their duties by hiding a pedophile and engaging in a cover-up of abuse perpetrated by DARLAK

94. Defendants knew and/or reasonably should have known, and/or knowingly condoned, and/or covered up the inappropriate and unlawful sexual activities of DARLAK, who sexually abused Plaintiff.

95. Defendants knew or should have known that some of the leaders, employees, volunteer agents, and/or people working in the Boys & Girls Club organizations and programs were not safe for children.

96. Defendants knew or should have known that they did not have sufficient information about whether or not their leaders, employees, volunteer agents, and/or people working in Boys & Girls Club mentorship programs within the Boys & Girls Club organizations were safe around children.

97. Defendants knew or should have known that there was a risk of child sex abuse for children participating in Boys & Girls Club programs in New York and/or Buffalo.

98. Defendants knew or should have known that they did not have sufficient information about whether or not there was a risk of child sex abuse for children participating in Boys & Girls Club programs and activities in New York and/or Buffalo.

99. Defendants knew or should have known that they had other agents who had sexually molested children. Defendants knew or should have known that child molesters have a high rate of recidivism. Defendants knew or should have known that there was a specific danger of child sex abuse for children participating in Defendants' youth programs.

100. Defendants held their leaders and agents out as people of high morals, teaching

14

families and children to obey these agent volunteers, teaching families and children to respect these agent volunteers, soliciting youth and families to their programs, marketing to youth and families, recruiting youth and families, and holding out the people that worked in the programs as safe for children/youth.

101.    Defendants negligently or recklessly asserted that DARLAK was fit to work with children, that he would not sexually molest children, and that he would not injure children.

102.    Defendants knew or should have known or were negligent in not knowing that DARLAK posed a threat of sexual abuse to children generally and to Plaintiff specifically.

103.    The acts of DARLAK, as described herein, were undertaken and/or enabled by, and/or during the course, and/or within the scope of his employment, appointment, and/or agency with Defendants BGC America, BGC Buffalo, and/or BGC Erie.

104.    Defendants' willful, wanton, grossly negligent, and/or negligent acts or omission resulted directly and/or proximately in the damages set forth herein.

105.    At all times relevant, Defendants' actions were willful, wanton, malicious, reckless, grossly negligent, and outrageous in its disregard for Plaintiff's rights and safety.

106.    As a direct and proximate result of the above-described conduct,  Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation and psychological injuries, was prevented and will continue to be prevented from performing  normal daily activities and obtaining the full enjoyment of life, has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling all to this Plaintiff's damage in excess of the jurisdiction of all lower courts.

**AS FOR A SECOND CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AGAINST THE DEFENDANTS BGC AMERICA,**

15

## BGC BUFFALO, AND BGC ERIE

107.    Plaintiff realleges, incorporates, and restates all previous paragraphs as if set forth fully herein.

108.    While children are participating in Defendants BGC America, BGC Buffalo, and/or BGC Erie's programs, they are in the physical custody and control of the Defendants and they exercise great influence on those children. As a result, Defendants have a special relationship with the children they serve.

109.    At all times relevant and during his entire tenure, DARLAK was an agent of Defendants BGC America, BGC Buffalo, and/or BGC Erie. DARLAK and Defendants were therefore in an employer-employee type relationship.

110.    DARLAK was given regular, direct, ongoing, one-on-one access to Plaintiff and other children during the course and scope of his duties, when Defendants knew or should have known that he presented an unreasonable risk of harm to minors.

111.    As an agent of Defendants BGC America, BGC Buffalo, and/or BGC Erie, DARLAK was under the direct supervision, management, agency, and control of Defendants at all times relevant during his interactions with Plaintiff.

112.    At all times relevant, Defendants BGC America, BGC Buffalo, and/or BGC Erie had a duty to supervise DARLAK and to investigate reports of inappropriate behavior on his part, and to discipline him appropriately, including by terminating his affiliation with Defendants' programs.

113.    At all material times, Defendants BGC America, BGC Buffalo, and/or BGC Erie, by and through their agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect his safety, care, well-being, and health while he was under the care,

16

custody, or in the presence of the Defendants. These duties encompassed the use of reasonable care in the hiring, retention, and supervision of DARLAK and otherwise providing a safe environment for children.

114.     Prior to the sexual misconduct perpetrated by DARLAK upon Plaintiff, Defendants BGC America, BGC Buffalo, and/or BGC Erie knew, or in the exercise of reasonable care, should have known, of the general problem of Boys & Girls Club engaging in sexual misconduct with children who were enrolled in the Boys & Girls Club's programs.

115.     Prior to the sexual misconduct perpetrated by DARLAK upon Plaintiff, Defendants BGC America, BGC Buffalo, and/or BGC Erie knew, or in the exercise of reasonable care, should have known, that DARLAK was unfit for the duties assigned to him, that he did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

116.     Given actual or constructive knowledge of DARLAK's dangerous propensities, the Defendants had a duty to act reasonably in all decisions relating to his hiring, supervision, and retention as an employee and/or volunteer agent.

117.     Defendants failed to exercise reasonable care in one or more of their decisions to hire, supervise, and retain DARLAK and therefore exposed Plaintiff to an unreasonable risk of harm.

118.     Defendants and affirmed and ratified DARLAK's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that DARLAK and/or other employees and/or volunteers would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendants BGC America, BGC Buffalo, and/or BGC Erie.

17

119.    Defendants BGC America, BGC Buffalo, and/or BGC Erie, and their agents had superior knowledge of the likelihood that DARLAK would engage in unwanted sexual contact with minor program participants that he encountered in his position as a Director and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

120.    At all relevant times, Defendants BGC America, BGC Buffalo, and/or BGC Erie's acts and omissions created an environment which fostered unwanted sexual contact and exploitation against the people it had a duty to protect, including Plaintiff.

121.    At all relevant times, Defendants BGC America, BGC Buffalo, and/or BGC Erie had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

122.    As a direct and proximate result of the above-described conduct, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress and mental anguish, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation and psychological injuries, was prevented and will continue to be prevented from performing  normal daily activities and obtaining the full enjoyment of life, has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling all to this Plaintiff's damage in excess of the jurisdiction of all lower courts.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for a sum in excess of the jurisdictional limits of all lower courts on each and every Cause of Action stated above, together with the costs and disbursements and other expenses necessary in this action.

Dated:    May 4, 2021                                 Respectfully submitted,

                                                                    THE MULLEN LAW FIRM
                                                                    Attorneys for Plaintiff
                                                                    110a Meadowlands Parkway, Suite 103

                                                    18

INDEX NO. 805926/2021
Case 1:21-cv-00639-CCR   Document 1-1   Filed 05/18/21   Page 20 of 21
RECEIVED NYSCEF: 05/05/2021

Secaucus, NJ 07094
201-420-1911

BY:  /s/ Corinne M. Mullen
     Corinne M. Mullen, Esq.


TO:
BOYS & GIRLS CLUBS OF AMERICA
Defendant
742 Delaware Ave.
Buffalo, NY 14209

BOYS & GIRLS CLUB OF BUFFALO, INC.
Defendant
282 Babcock St.
Buffalo, NY 14210

BOYS & GIRLS CLUBS OF ERIE COUNTY, INC
Defendant
742 Delaware Ave.
Buffalo, NY 14209

19

## ATTORNEY VERIFICATION

**CORINNE M. MULLEN**, an attorney duly admitted to practice before the Courts of this State affirms under penalty of perjury that she is counsel for the plaintiff herein and has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof; the same is true to my own knowledge, except as to the matters therein to be alleged on information and belief, and as to those matters I believe it to be true. That the source of my information and knowledge are investigations, communications with the client, and records in the file.

The reason that this verification is made by me and not by plaintiff is to protect the identity of the plaintiff under The New York Civil Rights Law.

Dated:    May 4, 2021

/s/Corinne M. Mullen
Corinne M. Mullen, Esq.
**THE MULLEN LAW FIRM**
110a Meadowlands Pkwy, Suite 103
Secaucus, NJ 07094
Telephone: (201) 420-1911
corinne@mullenlawfirm.com

20